First case is United States v. Robinson. Good morning, Your Honors. May it please the Court. K. Ron Robinson had a gun for his protection after he was shot and his brother was shot. He was the victim of violence, not the perpetrator. He did well on pretrial supervision, and at sentencing, he went immediately to supervised release. Given his individual history and characteristics, a condition that allowed a search of all of his electronic devices, based on suspicion that he may have violated any of 24 conditions, including technical ones, was not reasonably related to the sentencing factors. That condition should be vacated. You're not making a 922G1 argument given subsequent decisions by our Court? You're preserving it, right? You're preserving it? Correct, yeah. We're just now talking about the condition. That's right, Your Honor. We're talking about a condition to search all of his electronic devices, which this Court has not hesitated to strike when it's not appropriate in gun cases, for example, in Meadows, Morisot, and Jimenez. Yes. So I'm thrilled you're in front of us, because I need some help harmonizing some of our doctrine. So we have Meadows. We have Sims. We also have Robinson, and we have Lawrence. So if you can help me identify a through line, how should we understand Robinson and Lawrence in light of Sims, and how should we understand your case in light of the early Robinson and Lawrence? Yes, Your Honor. This Mr. Robinson case fits directly in line with the cases where this Court has struck the condition, and it is not like the newer Robinson case or Lawrence or Thompson. Those cases involve people who have lengthy criminal histories, quite lengthy ones, and that's highlighted by the Court. For example, in Robinson, the Court says the person has nine prior criminal convictions. In Thompson, it's a lengthy history. It includes things like rape. Lawrence also has numerous priors. The other distinguishing factor that is common with all three of those cases, and absent here, is that each of those people were on some sort of supervision when they committed the new crime. In Robinson and I believe it's Lawrence, it was the current crime, and in the third case, it was a past crime that had been committed while under supervision. We don't have that here. Mr. Robinson was not under supervision in this case and hadn't committed crimes on supervision before. The third distinguishing characteristic is that Mr. Robinson's objection is preserved. That was not true in those other cases. In Robinson, it's a little iffy. The Court says maybe it was preserved later. It certainly wasn't preserved at sentencing, and in Thompson and Lawrence, those are unpreserved issues. So those are three distinguishing characteristics that make Mr. Robinson's case different from these cases that uphold the condition and in line with the cases that strike the condition. Okay, so that was extraordinarily helpful. I am hoping we can talk about the wrinkle, I think, and the wrinkle is that he communicated via Facebook with co-conspirators. And so I'm wondering if that, we certainly have cases suggesting that, I don't know if the word quite is instrumentality, but when it is being used. So I'm wondering if there is an appropriate line to be drawn between electronic mechanisms of communication and things like his cloud storage or things that are really just electronic filing cabinets. If you could help me understand, what do we do about this Facebook communication piece? Yes, Your Honor. So that was in a prior crime that was five years before the gun possession. And he had finished, he had long finished his supervision on that prior crime. The communication on Facebook from the... I'm sorry, so, you know what, I'm going to let you finish. Go ahead. Finish, please. That communication on Facebook also appears ancillary to the bulk of the crime, which was also largely analog like the gun possession here. He was using nail polish to like... Exactly, Your Honor. So, yes, people use phones in all sorts of situations. So it's not surprising that the government can point to some use of a phone in the past. But that is not sufficiently connected to the search condition here. And the other reason it's not is not only was that old conviction old, it was five years old, but here we have a record of pretrial supervision of nine months where he was doing well, quite well, and did not have this type of electronic search. So there's no indication that it was necessary for him to do well under court supervision. On the contrary, he attended his programs as required on pretrial supervision. He took care of his sick daughter in the hospital, and he started a business. He excelled in that pretrial supervision without any type of electronic monitoring. So what I think you're asking us to do is to understand what I am calling the instrumentality justification, and maybe there's a better word for it, as needing some sort of proximity to who the person is right now. It cannot be that just because, or under your position, it cannot be that just because at one point somebody did something that involved something, if there's enough time has passed, that has, that no longer serves as a justification. I think that's right, Your Honor. And I think that the other thing that this Court as a whole is looking at in these cases is a more holistic view of the person's individual history and characteristics. Rather than plucking one specific thing and relying on that exclusively, the Court is looking at the person overall. So that's why in Robinson, the Court says that that person has such a lengthy history, at least nine prior convictions, including lying to members of law enforcement or people that are supervising him, and committing a new crime while in supervised release. And looking at that all, what's the basis for thinking that the judge didn't consider your client in the round as a whole person? He may have, Your Honor, but my client here, Mr. Robinson, looking at him as a whole person, there's no basis for this condition. Well, you're basically saying the district court exercised its discretion and reached this conclusion. You raised it before the district court. So the district court fully considered it. We're not on plain error here. But these were matters that were fully considered by the district court. And why would we want to? Don't you have to point out that the district court's decision was unreasonable? Yes, it was an abuse of discretion to impose. Why? Tell us why. Because there's not the connection to Mr. Robinson's individual characteristics here that requires a search condition that is What was limited to the circumstances of the particular case? Is the criminal history irrelevant? Or does it bear some relationship? It does bear a relationship. So the court can look at a broader view. And is part of this a question of whether the supervised release condition tends to protect the public generally? And so wouldn't Why wouldn't that give greater emphasis to a historical situation? And also, you know And then, you know And look also at the amount of time that's passed. So a generalized concern like protecting the public is exactly what this Court has said isn't appropriate in Olivares. That concern would apply to everyone. So something else But it has to be more than that, right? Exactly. It has to be more than that. And particularly in this case, the search condition was actually broader than the one upheld in Thompson because the reasonable suspicion does not need to be connected to the suspected violation. So, for example, if Mr. Robinson fails to get a full-time job and there's reasonable suspicion that he has not gotten a full-time job, that allows the probation officer to search his entire phone. If there's reasonable suspicion, he may have smoked marijuana. They can search his computer. That is broader than the condition that this Court upheld, for example, in Thompson where it specifically noted that the reasonable suspicion was connected to the violation which limited the condition. Here, we don't have that. And we have a Court that basically thinks Mr. Robinson has done well. The sentencing remarks made by the Court indicate that it believes that Mr. Robinson had a gun for his protection, that Mr. Robinson now understands that is dangerous and that he won't do it in the future, that he has done well on pretrial supervision, and so time served is appropriate. Well, it wasn't just dangerous, right? It was a violation of law, arguably. He was a — he had a prior record. Well, of course, Your Honor. That's why he was at a sentencing. So it's not just the dangerousness of his carrying a gun. It's the fact that he violated — he was a felon in possession. Yes, Your Honor. And what the Court pointed out at sentencing, the factors that it considered was that this was a person who had learned from that error, from that violation of the law, and was going to do well on supervised release. Nothing here supported this extra burdensome condition. Thank you. We'll hear from you, Your Honor. Thank you. Good morning. My name is Emily Deininger, and I represent the United States in this appeal. As I did in the district court below. Your Honor asked a minute ago about how to reconcile some of the different cases that have addressed this same issue in recent years. I think what is critical here to see is that the cases that have struck or remanded for search conditions, including Meadows, Jimenez, and Morrishow, are all cases where there is a process issue, where the district court did not announce or provide an individualized determination of why the special condition was being imposed at the time of sentencing. Well, that can't be just it, right? I mean, so let's start from the beginning. You agree that electronic communication and storage devices have nothing to do with the Section 922 offense. Not of the offense of conviction. Okay. So your entire position has to do with past convictions, right? And I'm assuming it's fraud. It's the fraud conviction. Is that right? I think it is. I mean, you think that Judge Kaplan provided an individualized determination at sentencing and adopted the government's position, which is a very Well, we can talk about whether or not merely saying I take the government's position is enough of an individualized assessment. I want to know, standing here today, what do you think justifies an electronic search of this person either for any of the justifiable reasons that you think have? I want to be able to know exactly what you're arguing. I think there are a few different things here, some of which were explicitly referenced below, some of which were not. Explicitly referenced below are the fact the defendant had two prior fraud convictions, and as laid out in the PSR, those did both involve electronic communications with co-conspirators to conduct and facilitate It was George, right, because it was analog, right? It was a very old-school thing. They used Facebook. What was the other communication? I think all the communications were on Facebook. Okay, so just Facebook. And then what else? The seriousness of the offense of conviction. Okay, but we know that the seriousness of the offense of conviction can't justify everything. Not on its own. It's just a factor that obviously the consideration Well, in fact, I thought you mentioned most mileage. In your brief, you said that that was the first issue, that it was the seriousness of the offense. And that is what Is that the position now, or is it the second reason? Is it the third reason? It is one of multiple factors that the court can consider in its determination. Other factors that were not explicitly addressed below but are self-evident from the record. Well, I'm sorry. Would the seriousness of offense justify everything? Like, okay, so why does the seriousness justify this particular condition? Would it justify forced medication? Your Honor, there is no forced medication. Would it justify an anti-association clause? I don't know. I can't address special conditions that were not imposed here. But in this case What I want to know is how much work does seriousness of the offense do for justifying these conditions? I don't. I think it has to be an individualized determination that, as the defendant himself is arguing, has to require consideration of them holistically. In this case, along with the factors we've already discovered, he had a long pattern of violating parole and supervised release. A long pattern? A long pattern. Both parole. He had, I believe, nine marijuana violations. He had an arrest in 2020 for a new fraud offense while on parole in the state parole case. He had also had several violations for, on pretrial release for drug conditions. He was arrested again while on pretrial release for an arrest that involved a dispute with his girlfriend. These are all things that are set forth in the PSR, self-evident in the record, and that justify the fact that there is reason to believe that a search condition would be helpful for making supervised release effective. Judge Kaplan clearly took the defendant's history and performance on supervised release, considered that very carefully in giving him a time-served sentence. But part of that consideration was the violations that the defendant had committed at the beginning and then the improved performance later. I think this Court has emphasized in recent decisions that, in fact, search conditions may be crucial. This was in Thompson. It was just recently decided in July of 25. How is data storage going to tell you whether or not he's going to have an incident with his girlfriend? Your Honor, data storage often, like iClouds, often includes messages and e-mails which can provide evidence of violations or criminal conduct. So the question I have is violations as opposed to violations of the supervised release conditions, which could be standard conditions, right? They don't have to be special conditions. And they need not be crimes. They just, you know, you have to report. You have to do – there are certain conditions that have to be met in order to maintain – in order to enhance the ability of the government to manage the supervised release that are administrative rather than criminal themselves. Data is crimes. And I'm wondering whether the condition itself would make more sense if it was reasonable suspicion concerning the violation of unlawful conduct by the person being supervised as opposed to any condition of supervised release. Your Honor. In other words, a condition of supervised release that really is non-criminal and is a slip-up, you know, leaves the state for three or four hours, comes back, and doesn't report if that's a condition, that kind of thing. I think there certainly can be such technical violations. However, there are – you know, one of the conditions is that you do not commit any other state or federal crimes. Yes. But that's not what the search condition covers. The search condition is an either or. It covers both, both independently. And I think – I'm just joking. I think allowing a condition that allows probation officers to identify the evidence of release conditions does serve an important purpose in making sure that the supervised release is effective, that the interest in the court granting the defendant the opportunity to be out on supervised release unless a longer sentence is being vindicated. And as we see all the time, violations of supervised release can, on their own, result in additional time in detention. They serve the trust that the court places in a defendant in being out on supervised release in an important interest on its own in making sure that that is not being violated and is vindicated. If Your Honors have no other questions, I will sit down. Your Honors, the government is overstating Mr. Robinson's history, I think because there's a lack of serious history here. The PSR does not show parole violations. He appears to have been discharged from parole as anticipated. That he had smoked marijuana in the beginning of his pretrial release has no connection to an electronic search condition, and the government hasn't pointed to any. These are also new reasons. The court, as Rana points out, gave no reasons. And just said what the government says. He did specifically say that, though, that he was adopting the government's position. So if you could help me figure out why, or if you could explain your theory as to why that is not enough to satisfy the individualized inquiry. Well, I believe it was Judge Walker who said that the judge had considered this fully and decided to impose it. It doesn't seem that that's the case. It seems that it was an afterthought where the court just relied on the bare reasons given by the government, which themselves are not sufficient. So to be clear, I'm not saying that just because the court adopted the government's reasons that that's the error. The court gave no reasons of its own, and the government's reasons weren't sufficient to justify the conviction. And in part, that's because the government then and today relies heavily on the crime of conviction. And that should be given very little weight, especially in a case like this, where it is a gun possession on the street. It is just the basic 922G. That is an analog crime that bears no relationship to a search of the crime. On a completely different area, does this search condition impact employment? So for example, someone is working for an aerospace company and is given a phone by the employer. Does this kind of search condition require that that phone be available for search even though it might contain proprietary secrets? Yes. There's nothing limiting it, limiting the condition. It applies to all of Mr. Robinson's electronic devices. Including the ones that are provided to him by an employer. Yes, Your Honor, because it says all, and there's no carve-out for employment. So he would have to tell his employer if the employer provides him with a computer or with an iPhone that it's subject to search. He's not required in the conditions to tell his employer, but it certainly sets up a problem. This Court has addressed the problem of the intersection of employment and search conditions in Miguel Salazar. That was a more extensive computer monitoring condition, but the Court vacated the condition in that case, recognizing the tension it created with getting a job. A search here requires that you submit property, residence, vehicle, papers, computers, other electronic communications, et cetera, and effects to a search. And does that include a search of an employer's office that's provided to the defendant? Do you follow me? I am following, Your Honor. I admit I have not memorized the condition precisely. I'm not sure. Just looking at it, the search is to be deducted where there's reasonable suspicion concerning violation of a condition of supervision or unlawful conduct. But my question is, now we're talking about the premises that could be searched. Obviously, his residence is one. But they're only challenging the electronic conditions. Is that correct? Yeah. I'm just asking broader questions that don't have to do with this case about the policies behind the search condition and whether the search condition itself perhaps should be revisited by the Southern District. It should, Your Honor. And you point to an excellent point, which is that these conditions didn't used to be imposed except in sex cases, because that's what the guidelines recommended. Today, we're in a situation where they are imposed extremely regularly. And it's not just the Southern District. It's the Eastern District as well. The language of the conditions differs sometimes. Usually, we can't figure out why. Like why in Thompson it required a nexus between the suspicion and the item, and here it doesn't. Sometimes it includes different areas to be searched than others. I have not seen one that carves out somebody's employer from the condition explicitly. But this is something that is coming up more and more, and it is an extremely broad condition. And judges seem to be thinking that it can apply to a vast variety of cases, and it shouldn't. Thank you. Thank you. Very happily argued. We will take this case under advisement.